# UNITED STATES DISTRICT COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| DUSTIN PATRICK LANCASTER, | Case No.: CV 09-683-S-CWD |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| PHILIP VALDEZ, KAT AMOS, | |
| Defendants. | |

Currently pending before the Court is Defendant Stander's Motion for Summary Judgment (Dkt. 15). Also at issue is service of process on Defendants Kat Amos and Rory O'Connor. For the reasons set forth below, the Court will: (1) deny Defendant Stander's Motion for Summary Judgment (Dkt. 15); (2) direct the United States Marshal Service to serve Defendants Amos and O'Connor; and (3) refer this case for a settlement conference before United States Magistrate Judge Ronald E. Bush.

## BACKGROUND

**A.  Procedural History**

On December 28, 2009, Plaintiff filed this lawsuit regarding the medical care he received after undergoing elbow surgery. Dkt. 3. The surgery took place while Plaintiff was in the custody of the Idaho Department of Correction ("IDOC") and housed at the North Idaho Correctional Institution ("NICI"). *Id.*. The Court conducted an initial review

**MEMORANDUM DECISION AND ORDER- 1**

of Plaintiff's claims, as required under 28 U.S.C. §1915A, and permitted Plaintiff to proceed with Eighth Amendment claims against Defendants Amos, O'Connor, and Stander. Dkt. 8. All other claims were dismissed.

Because Plaintiff is proceeding *in forma pauperis*, the Court is responsible for service of process. To date, only Defendant Stander has been served.

**B.     Facts Alleged**

The facts are largely undisputed and are derived from Plaintiff's medical records. *See* Affidavit of Acel Thacker (Dkts. 17, 18). The parties simply dispute whether the treatment Plaintiff received constitutes deliberate indifference.

On April 13, 2009, Plaintiff had elbow surgery due an injury he sustained while playing basketball.[1] ICC Lancaster 111 (Dkt. 18). On April 17, 2009, Dr. Steven R. Boyea conducted a post-operation examination of Plaintiff and recommended the following treatment: "The patient will follow up in about two weeks for a cast removal, staple removal and then we will possibly repeat x-rays. If they demonstrate good overall alignment, we may get him into a brace and begin some range of motion activities at that time." *Id.* at 108.

On May 8, 2009, Plaintiff's cast was removed. *Id.* at 135. Four days later, on May 12, 2009, Plaintiff was transferred from NICI to the Idaho State Correctional Institution ("ISCI").

---

[1] It appears that Plaintiff had previous problems with his left elbow . *See* ICC Lancaster 72, 157. On March 3, 2009, Plaintiff completed a health service request stating, "I have tendonitis [sic] in my left elbow and it hurts very bad." *Id.*

**MEMORANDUM DECISION AND ORDER- 2**

Plaintiff alleges that, upon transfer, he told Michael Takagi, a Physician Assistant with Correctional Medical Services, Inc., about his injury. *Complaint*, p. 4 (Dkt. 3). Takagi's alleged response to Plaintiff was, "Yeah, well you're in prison." *Id.*

Nevertheless, on May 13, 2009, Takagi referred Plaintiff to physical therapy. ICC Lancaster 59 (Dkt. 18). The treatment note states, "PT referral - to K. Amos." *Id.* Takagi also noted that Plaintiff was already experiencing a decreased range of motion ("ROM") and "in cell ROM stretches has [sic] not increased ROM." *Id.*

On May 22, 2009, Dr. Boyea sent to Defendant Amos a letter stating:

> It is important that he [Plaintiff] be seen and follow up by an Orthopaedic Surgeon [sic] to make sure the fracture is healing and he gets return of function and motion. He should be out of his cast and be have [sic] started Physical Therapy. When an Orthopaedic Surgeon [sic] is identified please contact me so I can inform them of the injury pattern and operative intervention that was preformed [sic].

*Id.* at 50.

On June 10, 2009, Takagi submitted a second consultation request for orthopedic assessment and follow up. *Id.* at 134. Takagi noted that Plaintiff's ROM had decreased and "[Patient] has not yet been started on PT post surgery." *Id.*

Despite these three separate requests, Plaintiff received no physical therapy while housed at the ISCI. Instead, approximately one month after his transfer from NICI to ISCI, Plaintiff was transferred to the private prison on June 18, 2009.

An Intrasystem Transfer Form dated June 17, 2009 indicates that Plaintiff had no acute or chronic problems, no current treatments, no consultations scheduled, and no

**MEMORANDUM DECISION AND ORDER- 3**

follow-up care was needed other than pain medications and anti-inflammatories. *Id.* at 173. It is not clear from the record who completed this form.

Upon arrival at the Idaho Correctional Center ("ICC"), Plaintiff again informed medical staff of his injury and the necessity of physical therapy. *Complaint*, pp. 4 (Dkt. 3), Appendix B (Dkt. 3-1). However, the ICC Initial Health Screening Form completed upon transfer reflects only that Lancaster had a visible sign of physical deformity, specifically, "contracture of left elbow." ICC Lancaster 25 (Dkt. 18). It also indicates that Plaintiff had a left elbow repair in April 2009 and lists Dr. Boyea as his personal physician. *Id.*

Nearly three weeks later, on July 6, 2009, Physician Assistant Rory O'Connor examined Plaintiff and entered a progress note stating "Left arm flexion contracture due to delay in PT to work on ROM following surgery. [Patient] states that he had attempted some ROM exercises on his own but with little effect." *Id.* at 66.

Two months later, on August 4, 2009, ICC staff ordered x-rays. *Id.* at 55. X-rays were taken on August 6, 2009 and August 25, 2009. *Id.* at 37, 49.

On September 11, 2009, Defendant Stander examined Plaintiff. Dr. Stander's treatment notes state "frozen left elbow joint" and "he is left handed." *Id.* at 54. Dr. Stander recommended an orthopedic consultation and prescribed pain relievers and anti-inflammatories. *Id.* at 54.

On October 7, 2009, orthopedic specialist, Darby Webb., M.D., examined Plaintiff and made the following notations in a report submitted to Dr. Stander:

**MEMORANDUM DECISION AND ORDER- 4**

> [Plaintiff] subsequently was in a cast for approximately one month. When this was removed, he has been just trying to move it on his own without physical therapy. Unfortunately, Dustin has developed arthrofibrosis of his left elbow. It is extremely severe. I do not think formal physical therapy at this point will help. I have recommended open excision and lysis of adhesions as well as capsular release. I have told [Plaintiff] that even if he would have done physical therapy, he likely would have had some residual stiffness in the elbow despite the excellent treatment by Dr. Boyea. . . but this is a severe injury that can cause some stiffness in the elbow.

*Id.* at 120-21.

On October 15, 2009 and November 17, 2009, Dr. Stander saw Plaintiff. *Id.* at 65. The November 17, 2009 treatment notes reflect that Plaintiff wanted to go ahead with Dr. Webb's recommended surgery. *Id.* In addition, on November 25, 2009, Plaintiff contacted Dr. Webb directly and requested the recommended surgery. *Id.* Nonetheless, Dr. Webb then questioned whether the recommended surgery would be adequate and recommended a second opinion from a hand specialist.

On February 1, 2010, Dr. David M. Lamey, MD, a hand specialist, examined Plaintiff. *Id.* at 119. Dr. Lamey recommended a CT scan in order to develop a treatment plan. *Id.* at 123-24.

On February 26, 2010, Dr. Stander ordered a CT scan. *Id.* at 53. On March 3, 2010, Dr. Jere G. Sutton, a physician in Pueblo, Colorado, reviewed Plaintiff's medical records and verified that a CT scan was an appropriate recommendation. *Id.* at 45.

On March 22, 2010, Plaintiff had the CT scan. *Id.* at 47, 187. On April 21, 2010, Dr. Lamey examined Plaintiff and issued a final recommendation stating:

**MEMORANDUM DECISION AND ORDER- 5**

> I do not think he will benefit from therapy or other stretching activities significantly. I think this is a surgical problem [sic] will requires [sic] anterior and posterior soft tissue release at the elbow. I have explained that I think he [sic] would be best for him to wait until he is no longer incarcerated. This is because his outcome would be highly dependent on his postoperative management and postoperative therapy. I think it would be difficult or impossible to accomplish a good outcome while he is incarcerated. He seems to understand this. He will contact me when he is no longer incarcerated.

*Id.* at 115-16.

## SUMMARY JUDGMENT

**A.     Standard of Law**

Summary judgment is appropriate if a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *See id*. at 248.

**MEMORANDUM DECISION AND ORDER- 6**

The moving party is entitled to summary judgment if that party shows that each issue of material fact is not or cannot be disputed. To show the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)&(B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322).

Rule 56(e) authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

In the instant case, summary judgment is not appropriate. Defendant Stander argues that the medical records demonstrate, as a matter of law, that Dr. Stander was not deliberately indifferent to Plaintiff's medical needs. However, the Court's review of the medical records reflect a dispute of fact on this issue. As a matter of constitutional law, the alleged failure to provide Plaintiff with any physical therapy while he was incarcerated at ISCI could support a claim of deliberate indifference against Defendants Amos and O'Connor, who were, in some part, responsible for Plaintiff's medical care while there. Similarly, as a matter of constitutional law and for the purposes of summary

**MEMORANDUM DECISION AND ORDER- 7**

judgment, after Plaintiff's transfer to ICC, the initial failure to provide physical therapy consistent with three previous doctor's orders, the three-week delay in seeing a physician's assistant, and the three-month delay in seeing Dr. Stander, together, support a reasonable inference that Dr. Stander was deliberately indifferent to Plaintiff's medical needs. Accordingly, summary judgment will be denied.

B.  **The Eighth Amendment Deliberate Indifference Standard**

To prevail on an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). The Supreme Court has opined that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.*

> The Ninth Circuit has defined a "serious medical need" in the following ways: failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain; . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could

**MEMORANDUM DECISION AND ORDER- 8**

be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 838 (1994). Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Mere indifference, medical malpractice, or negligence alone will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Lab*, 622 F.2d 458, 460 (9th Cir. 1980). A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990). The Ninth Circuit recently clarified that if medical personnel have been "consistently responsive to [the inmate's] medical needs, and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," summary judgment is proper. *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

In the instant case, the undisputed facts reflect that Plaintiff had elbow surgery on April 13, 2009. The medical records also reflect that Plaintiff's elbow condition and lack of mobility was readily observable and Plaintiff was prescribed pain medication for his situation. Nevertheless, despite three separate requests for physical therapy while Plaintiff was housed at ISCI, Plaintiff received no physical therapy either before or after his transfer to ICC.

**MEMORANDUM DECISION AND ORDER- 9**

ICC suggests that, if Plaintiff's condition worsened as a result of the lack of physical therapy, it occurred while Plaintiff was housed at ISCI. Nonetheless, it is equally plausible that Plaintiff's condition deteriorated further after transfer.

Furthermore, despite the visible problem with Plaintiff's elbow, his inability to feed himself, and the on-going pain management, Plaintiff did not see a physician's assistant at ICC for nearly three weeks and did not see a doctor at ICC until September 11, 2009, nearly three months after transfer. At that time, Defendant Stander noted Plaintiff's severe mobility issues, yet x-rays were not taken for one month and an orthopedic consultation did not take place for three months. When the orthopedic consult occurred, it was too late for physical therapy and Dr. Webb recommended surgery as the only viable treatment option.

Though delays in medical treatment alone do not support a deliberate indifference claim, the undisputed facts support a reasonable inference that the failure to provide timely physical therapy, both before and after transfer to the ICC, could have resulted in further injury to plaintiff, unnecessary pain, and the necessity of an additional surgery to correct the injury occasioned by the lack of medical attention.

In light of Plaintiff's medical record, his visible limitations, and his consistent reports of pain, the failure to provide Plaintiff with the treatment directed by Dr. Boyea creates a dispute of fact that defeats summary judgment on Plaintiff's deliberate indifference claims. Given the acute and time-sensitive nature of Plaintiff's injury, a reasonable person could conclude that Defendant Stander's failure to treat Plaintiff for

**MEMORANDUM DECISION AND ORDER- 10**

three months upon his transfer to ICC constituted deliberate indifference in violation of the Eighth Amendment. Accordingly, Defendant's motion for summary judgment must be denied.

## SERVICE ISSUES

The Initial Review Order directed the Clerk of the Court to forward a copy of the Complaint, the Initial Review Order, and a Waiver of Summons to counsel for the Idaho Department of Corrections, the Idaho Corrections Corporation, and the Corrections Corporation of America. *Id.* The only Defendant to appear in this action is Defendant Stander who appeared through counsel for the Idaho Corrections Corporation. *See* Dkt. Nos. 9, 10, 13.

The Court has requested service addresses from Plaintiff, and Plaintiff has responded in a timely manner to the Court's requests. Nonetheless, neither O'Connor nor Amos has been served. Accordingly, the Clerk of Court will issue summonses and provide the United States Marshal Service with service addresses for Defendants Rory O'Connor and Kat Amos, *see* Dkts. 32 and 33, who shall be served with a copy of the docket, Plaintiff's Complaint, the Initial Review Order, and the instant order. In addition, the Clerk will send a copy of this order to counsel for the Idaho Department of Correction, Paul Panther.

## SETTLEMENT

This case is referred to United States Magistrate Judge Ronald E. Bush for a settlement conference to be set after Defendants O'Connor and Amos have appeared

**MEMORANDUM DECISION AND ORDER- 11**

through counsel but no later than December 16, 2011.  Defendants O'Connor and Amos may elect to participate in the settlement conference but will not be ordered to do so at this time.

## ORDER

In accordance with the foregoing, IT IS HEREBY ORDERED:

1. Defendant's Motion for Summary Judgment (Dkt. 15) is DENIED.

2. The Clerk of the Court is directed to issue summonses and provide the United States Marshals Service with a copy of the docket, Plaintiff's Complaint, the Initial Review Order, and the instant order to be served upon the following Defendants at the following addresses:

   Kat Amos  
   5420 W. Franklin Rd., Ste. C  
   Boise, ID 83705

   Rory O'Connor  
   13150 W. Tersimmon Ln.  
   Boise, ID 83713.

3. The Clerk of the Court is also directed to send a copy of this Order to IDOC counsel, Paul Panther at 1299 N. Orchard, Ste. 110, Boise, ID 83706.



DATED: June 20, 2011

Honorable Candy W. Dale  
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER- 12**