UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DUSTIN PATRICK LANCASTER,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>KAT AMOS, RORY O'CONNOR, and KLINT STANDER,<br><br>　　　　　Defendants. | Case No. 1:09-cv-00683-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

　　　　Pending before the Court are Plaintiff's Motion for Leave to Reset Scheduling Order and to Amend Complaint (Motion to Amend) (Dkt. 83) and Defendant Kat Amos's Motion for Protective Order (Dkt. 85.) All parties have consented to proceed before a United States Magistrate Judge. (Dkt. 73.) Having fully reviewed the record and the materials submitted by the parties, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.  Accordingly, in the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, these two motions will be decided on the record before the Court. Dist. Idaho L. Rule 7.1(d)(1).

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

**1. Alleged Facts**

At the time of the facts alleged in this case, Plaintiff was an inmate in the custody of the Idaho Department of Correction (IDOC). On April 12, 2009, Plaintiff injured his lower left arm while playing basketball at the North Idaho Correctional Institution (NICI). (Dkt. 53, p.2.) The next day, Plaintiff had elbow surgery to repair his injured arm. (*Id.*) On May 12, 2009, Plaintiff was transferred from NICI to the Idaho State Correctional Institution (ISCI). (*Id.,* p.3.) Plaintiff alleges that, while he was housed at ISCI, he was examined twice by Physician Assistant Michael Takagi who referred Plaintiff to physical therapy and noted decreased range of motion in Plaintiff's arm. (*Id.,* pp.3-4.) In addition, on May 22, 2009, Plaintiff's surgeon sent a letter to Defendant Kat Amos, whose job as a Corizon, Inc. scheduler was to schedule prisoners' medical appointments and consultations, recommending that Plaintiff have a follow-up appointment with an orthopedic surgeon and that Plaintiff begin physical therapy. Plaintiff received no physical therapy while housed at ISCI. (*Id.*)

On June 18, 2009, Plaintiff was transferred to the Idaho Correctional Center (ICC). Physician Assistant Rory O'Connor examined Plaintiff on July 6, 2009, and noted that Plaintiff's left arm had flexion contracture due to a delay in physical therapy. (Dkt. 18, p.48.) X-rays of Plaintiff's arm were taken August 6, 2009 and August 24, 2009. (Dkt. 53, p.5.) Defendant Dr. Stander examined Plaintiff on September 11, 2009, noted his frozen left elbow joint, and recommended an orthopedic consultation. (*Id.*) An orthopedic

**MEMORANDUM DECISION AND ORDER - 2**

specialist, Dr. Webb, examined Plaintiff on October 7, 2009, and noted that beginning physical therapy at that point in time would not help Plaintiff's "extremely severe" arthrofibrosis of the left elbow; rather, additional surgery would be needed to repair Plaintiff's elbow. (*Id.*)

Defendant Stander examined Plaintiff again on October 15, 2009, and November 17, 2009. Defendant Stander's notes indicate Plaintiff wanted to proceed with Dr. Webb's recommended surgery, but, when Dr. Stander contacted Dr. Webb, Dr. Webb recommended obtaining a second opinion from a hand specialist. (*Id.*, pp.5-6.) On February 21, 2010, Plaintiff was seen by Dr. Lamey, a hand specialist, who recommended a CT scan be taken to develop a treatment plan. (*Id.*) After receiving the results of the CT scan, Dr. Lamey issued a final recommendation on April 21, 2010, stating that Plaintiff would not benefit from physical therapy but needed surgery to repair his elbow, and recommending that such surgery be performed when Plaintiff was no longer incarcerated to ensure adequate postoperative management and therapy. (*Id.*)

## 2. Procedural Background

Plaintiff filed his original lawsuit pro se in December 2009 regarding the medical care he received (or lack thereof) after undergoing elbow surgery while in the custody of IDOC. (Dkt. 3.) In June 2010, the Court conducted an initial review of Plaintiff's claims and permitted Plaintiff to proceed with his Eighth Amendment claims against Defendants Amos, O'Connor, and Stander. (Dkt. 8.) The Court dismissed all claims against Defendants Reinke and Valdez, because Plaintiff failed to allege facts showing that either

**MEMORANDUM DECISION AND ORDER - 3**

of these Defendants was deliberately indifferent to, or even aware of, Plaintiff's medical condition. (*Id.*, p.4.) Less than two weeks later, counsel for Defendant Stander filed a notice of appearance (Dkt. 10), and on November 9, 2010, Defendant Stander filed a Motion for Summary Judgment. (Dkt. 15.)

On June 20, 2011, the Court denied Defendant Stander's Motion for Summary Judgment and ordered the Clerk of Court to issue summonses to the United States Marshal Service to effect service upon Defendants O'Connor and Amos. (Dkt. 35.) Defendant O'Connor was served in June 2011 (Dkt. 38), but Plaintiff had a difficult time obtaining the correct address for Defendant Amos; she eventually was served in January 2012. (Dkt. 64.)

Because of the ongoing delays in serving all the Defendants, pretrial deadlines in this action (*see* Dkt. 42) have been amended two different times. (*See* Dkts. 46, 74). Counsel for Plaintiff appeared in this action on September 27, 2011 (Dkt. 43), and, soon after, the parties stipulated to a proposed amended scheduling order, which the Court granted on October 17, 2011. (Dkt. 46.) In that Amended Scheduling Order, the parties were to join additional parties or amend their pleadings no later than October 30, 2011.[1] (*Id.*, p.1.) Plaintiff next filed a Motion to File First Amended Complaint on October 29, 2011, seeking to modify Plaintiff's original pro se pleading into a more traditional format, to "streamline claims and parties" in compliance with the June 20, 2011 Memorandum

---

[1] In the Memorandum in Support of Motion to Modify Scheduling Order Filed July 25, 2011, Plaintiff's counsel asserted that he "has identified additional parties that may be added to the action and [counsel] needs additional time to evaluate claims and locate potential parties." (Dkt. 44-1, p.2.)

**MEMORANDUM DECISION AND ORDER - 4**

Decision and Order (Dkt. 35), and to add punitive damages. (Dkt. 47, pp.1-2.) No new parties or claims were added. The Court granted Plaintiff's Motion to Amend on November 30, 2011. (Dkt. 52.)

As mentioned above, once Defendant Amos was served in this action on January 19, 2012 (*see* Dkt. 64), her counsel served her initial disclosures upon Plaintiff and made the second request to amend the pretrial deadlines by moving to vacate and reset certain pretrial deadlines.[2] (Dkts. 67, 70.) Plaintiff opposed Defendant Amos's Motion to Vacate, and argued that "[g]ood cause does not exist to delay this case to the extent requested by Defendant Amos." (Dkt. 71, p.4.) Plaintiff further contended that he "had already disclosed [his] expert witnesses in accordance with the Court's scheduling order and was prepared to litigate this case on the schedule previously set by the Court." (Dkt. 71, p. 4.)

Meanwhile, on December 23, 2011, third party Corizon, Inc. filed a Motion to Quash Subpoena or, in the Alternative, for a Protective Order. (Dkt. 58.) The subpoena at issue had commanded production of various documents, including Plaintiff's medical records, Defendant Amos' employment records, complaints and practices regarding surgery and physical therapy, and various Corizon policies and procedures.

On June 13, 2012, the Court: (1) denied in part Corizon's Motion to Quash and ordered that certain records and policies, as set forth in the Order, be produced to Plaintiff by July 13, 2012; and (2) reset the pretrial deadlines in accordance with Defendant

---

[2] In Plaintiff's initial disclosures, he identified himself and the following individuals as having knowledge pertinent to the care and treatment of Plaintiff: Stephanie Voorstad, LPN, Michael Takagi, P.A., and Scott Lossman, M.D. (Dkt. 70, pp.2-3.)

**MEMORANDUM DECISION AND ORDER - 5**

Amos' Motion to Vacate. (Dkt. 74.) The pertinent deadlines were reset as follows:

> Disclosure of relevant information and documents - June 29, 2012;
> Completion of discovery (including lay depositions and requests for subpoenas) except expert discovery - August 24, 2012;
> Plaintiff's expert disclosures - September 28, 2012;
> Defendants' expert disclosures - October 26, 2012; and
> Expert depositions - November 9, 2012.

(*Id.*, pp. 11-12.) On July 17 and 24, 2012, Corizon's attorneys provided Plaintiff's counsel, under cover letter, the requested records. (Dkts. 87-2, 88.) The July 17, 2012 letter disclosed, in part, a description of the off-site scheduler's responsibilities and duties, and the following information about physical therapy or range of motion activities:

> Physical therapy is a treatment that must be ordered by the provider and approved through the utilization management process which requires approval by the regional medical director. If physical therapy was approved in 2009, the offender would have gone off-site to see a therapist since it was not offered at ISCI at that time. If the request was not approved it would be because there are alternative treatment methods that are equally effective or the requested care is not medically necessary. Please see COR 279-80, 284-86 (attached to the letter).

(Dkt. 88, p.3.) After receiving these records, Plaintiff did not seek to depose, or serve any discovery upon, Defendant Amos. (Dkt. 86, p.4.)

On October 26, 2012, the deadline for expert disclosures, Defendant Amos provided an expert disclosure to Plaintiff's counsel and "out of an abundance of caution" identified herself as a potential expert, as well as Tom Dolan, the Regional Director for Corizon. (Dkts. 86, p.4.; 83-12, pp.2-3.) Defendant Amos' proposed expert testimony is described as follows:

> Ms. Amos is a defendant in this matter and is expected to testify as a fact

**MEMORANDUM DECISION AND ORDER - 6**

>witness regarding her role and duties as a scheduler for Correctional Medical Services, Inc. (n/k/a Corizon, Inc.), including the extent to which plaintiff alleges she was involved in the scheduling of any physical therapy. Her testimony will be based upon her education, training and experience. Ms. Amos would be expected to testify that her duties as a scheduler were limited. Ms. Amos would be expected to testify that a scheduler may not diagnose or treat inmates and schedulers cannot otherwise order requests for offsite or onsite consultations. She would be expected to testify that she could only schedule offsite or onsite consultations after a consultation request was signed by the Regional Medical Director. She would be expected to testify that she did not receive any consultation requests for physical therapy that were signed by the Regional Medical Director and that she therefore would have had no authority to schedule physical therapy for the plaintiff. To the extent she had any involvement in issues related to this case, she would be expected to testify that her actions were appropriate and that she did not act with deliberate indifference to any of the plaintiff's medical needs.

(Dkt. 83-12, p.2.)

On November 1, 2012, eight days in advance of the expert deposition deadline, Plaintiff's counsel served a Notice of Deposition upon Defendant Amos. (Dkt. 98-2.) On November 8, 2012, Defendant Amos filed a Motion for Protective Order to prohibit Plaintiff from conducting her deposition, or in the alternative, commanding that the deposition be conducted in Dickinson, North Dakota, where Defendant Amos currently resides. (Dkt. 85.) Defendants Stander and O'Connor filed a Joinder in support of Defendant Amos' Motion for Protective Order. (Dkt. 90.) Plaintiff, however, contends that Defendant Amos' Motion for Protective Order does not meet any of the factors establishing "good cause" for protection under Federal Rule of Civil Procedure 26(c). (Dkt. 98.)

On November 2, 2012, Plaintiff filed the instant Motion to Amend wherein he

**MEMORANDUM DECISION AND ORDER - 7**

seeks to: (1) amend the First Amended Complaint to add seven new defendants to this action as well as several new policy-based claims; and (2) amend the existing Scheduling Order to obtain additional discovery in support of the new claims and parties he wishes to add to this lawsuit. (Dkt. 83.) Defendant Amos filed her response to Plaintiff's Motion to Amend and contends that good cause does not exist to permit amendment of the complaint, and that Plaintiff's proposed amendment would be futile. (Dkt. 93.) Likewise, Defendants Stander and O'Connor argue that Plaintiff's Motion to Amend is futile, would result in undue delay and prejudice, and was filed in bad faith. (Dkt. 95.)

## DISCUSSION

**1.    Plaintiff's Motion For Leave to Reset Scheduling Order and to Amend Complaint (Dkt. 83)**

As set forth above, Plaintiff's Motion to Amend seeks to amend the First Amended Complaint to add seven new defendants to this action and several new policy-based claims, as well as amend the existing Scheduling Order to obtain additional discovery in support of the new claims and parties he wishes to add to this lawsuit. (Dkt. 83.) Also as noted above, the amendment of pleadings deadline was one year earlier, on October 30, 2011.

Generally, attempts to amend a complaint before a scheduling order's deadline to do so are addressed under Federal Rule of Civil Procedure 15. But since Plaintiff is seeking to amend the First Amended Complaint after the deadline specified in the Court's Amended Scheduling Order (*see* Dkt. 46), Federal Rule of Civil Procedure 16's good-

**MEMORANDUM DECISION AND ORDER - 8**

cause standard is considered first.[3] *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992) ("Once the district court ha[s] filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which established a timetable for amended pleadings[,] that rule's standards controlled."). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Id.* at 609 (quoting Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)). The inquiry ends, however, if the party seeking the amendment has not shown diligence. *Id.; AZ Holding, L.L.C. v. Frederick*, 2009 WL 3063314 *3 (D. Ariz. 2009). Once good cause is established under Rule 16(b)(4), the moving party must also demonstrate that amendment also would be proper under Federal Rule 15. *AZ Holding*, 2009 WL 3063314 *3.

> Good cause may be established by the moving party showing:
>
> (1) that [it] was diligent in assisting the Court in creating a workable Rule 16 order ...; (2) that [its] noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding [it]s diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference...; and (3) that [it] was diligent in seeking amendment of the Rule 16 order, once it became apparent that it could not comply with the order.

---

[3]Specifically, Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. (16(b)(4).

**MEMORANDUM DECISION AND ORDER - 9**

*Morse v. SEG U.S. 95, LLC*, 2011 WL 781254 *2 n.7 (D. Idaho 2011) (citing *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (N.D. Cal. 1999)).

Here, Plaintiff contends that he was diligent in the "prosecution of his related claims" but he "was hindered by [Defendant] Amos and [third party] Corizon's unforeseen dilatory conduct." (Dkt. 83-2, p.6.) In particular, Plaintiff argues that: (1) third party Corizon's effort to quash the subpoena Plaintiff served upon it in December 2011, which subpoena included a request for production of Defendant Amos' employment records, complaints and practices regarding surgery and physical therapy, and various Corizon policies and procedures; and (2) Defendant Amos' last minute "expert" disclosure on October 26, 2012, explaining how she was unable to schedule offsite consultations for physical therapy without a consultation request signed by the Regional Medical Director, were the reasons Plaintiff was "unable to comply with the October 30, 2011 deadline to amend pleadings and join parties because [Plaintiff] did not have enough time to investigate the culpability of additional parties prior to the deadline." (*Id.*, pp.6-9.) Plaintiff further contends that Defendant Amos' "expert" witness disclosures should have been part of her Rule 26 initial disclosures and that, by failing to do so, Plaintiff was denied the ability "to discover information which would have supported naming additional parties and obtaining relevant Corizon policies." (*Id.*, p.8.)

Plaintiff's arguments are belied by other salient aspects of the procedural history in this case. As soon as Plaintiff retained counsel in September 2011, Plaintiff's counsel filed a motion to modify the existing Scheduling Order, and acknowledged that it "has

**MEMORANDUM DECISION AND ORDER - 10**

identified additional parties that may be added to the action and ... needs additional time to evaluate claims and locate potential parties." (Dkt. 44-1, p.2.) Plaintiff's counsel then proposed the deadline of October 30, 2011, for joinder of parties or amendment of pleadings (*see* Dkt. 44), which the Court approved and set in the Amended Scheduling Order. (*See* Dkt. 46.) However, when Plaintiff timely filed a Motion to File First Amended Complaint, he did <u>not</u> include any new claims or parties, nor did he indicate that he needed more time to do so, or that Defendants were not cooperating or otherwise hindering his ability to do so.

On November 15, 2011, Defendants Stander and O'Connor made their Rule 26 initial disclosures to Plaintiff and disclosed Acel Thacker and Michael Takagi as individuals likely to have discoverable information. (Dkt. 95-12, pp.3-4.) Two weeks later, Plaintiff's own initial disclosures to Defendants Stander and O'Connor also included Acel Thacker and Michael Takagi as individuals likely to have discoverable information. (Dkt. 95-13, pp.4,8.) Nothing in the record indicates Plaintiff ever served discovery upon, or sought to depose, either of these individuals whom he now seeks to add as new parties in the Proposed Second Amended Complaint and Demand for Jury Trial.

A few months later, when Defendant Amos filed a Motion to Vacate and Reset Pre-Trial Deadlines on February 28, 2012 (Dkt. 67), Plaintiff opposed the Motion and stated he "was prepared to litigate this case on the schedule previously set by the Court" and that "[d]elay in this case prejudices [Plaintiff]...." (Dkt. 71, pp.4-5.) Alternatively, Plaintiff argued that if the pretrial deadlines were extended, then the deadline to add new

**MEMORANDUM DECISION AND ORDER - 11**

claims or parties should be 14 days from the issuance of the Court's applicable order. The Court did not include this proposed deadline in its order, however, and Plaintiff did not file a motion to reconsider the issue. Plaintiff's desire to litigate the case on the Court's previous schedule rather than move to amend the Complaint or timely serve discovery upon Defendant Amos fails to support Plaintiff's assertion that he was diligent in the "prosecution of his related claims." (Dkt. 83-2, p.6.)

Finally, on July 17, 2012, Plaintiff received information and documents previously requested by subpoena from Corizon, including a job description of Defendant Amos' position, as well as a description of "physical therapy or range of motion activities" that summarized the approval process for obtaining off-site physical therapy. (Dkt. 88, p.3.) Corizon provided enough information for Plaintiff to timely serve discovery upon, or depose, Defendant Amos to glean more details, names, and other facts about her job duties and Corizon's policies before the non-expert discovery deadline of August 24, 2012. Alternatively, Plaintiff could have timely requested an extension of time to obtain such discovery. Once again, Plaintiff did not do so.

Instead, Plaintiff filed his Motion to Amend on November 2, 2012, only after receiving Defendant Amos's Expert Witness Disclosure. In that disclosure, Defendant Amos states she will provide "expert" testimony about her role as a Corizon scheduler and what approval requests she needed before she could schedule physical therapy for the Plaintiff. (Dkt. 83-12, p.2.) Defendant Amos also listed Tom Dolan, Regional Director for Corizon, as another expert witness who would testify as to Defendant Amos' scope and

**MEMORANDUM DECISION AND ORDER - 12**

limitations as a Corizon scheduler. Plaintiff's argument that this disclosure should have been part of Defendant Amos' Rule 26 initial disclosures and that her failure to do so denied Plaintiff the ability "to discover information which would have supported naming additional parties and obtaining relevant Corizon policies" (*see* Dkt. 83-2, p.8) is contradicted by the record and without merit. In particular, Corizon's July 17, 2012 disclosure to Plaintiff contains nearly the same information about Corizon's policies and procedures regarding physical therapy, as well as the scheduler's role in such procedure that Defendant Amos provides in her expert witness disclosure. And prior to that disclosure, Plaintiff already was made aware of Brent Reinke, Michael Takagi, and Acel Thacker's knowledge of and potential involvement in this case.

     Perhaps Plaintiff's latest Motion to Amend is the result of a change in litigation strategy with the appearance of additional counsel on his behalf in September 2012. However, until he filed the Motion to Amend, Plaintiff maintained he was ready to litigate this case and that further delay in this case would be prejudicial to him; and, he passed up several opportunities to timely amend his complaint or conduct discovery regarding Defendant Amos or any of the other individuals known to Plaintiff through initial disclosures or his own experience while housed at ISCI and ICC. Regardless of the reason for Plaintiff's belated Motion to Amend, over three years have passed since this action commenced and Plaintiff did not move to add new claims or parties until more than one full year after the deadline for doing so had passed. Plaintiff appears to be "flailing about, but [his] opponents should not have to bear the brunt of that flailing." *Janicki*

**MEMORANDUM DECISION AND ORDER - 13**

*Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994).

Based on the foregoing, the Court finds that Plaintiff lacked diligence in creating a workable scheduling order (having had at least two chances to do so); further, Plaintiff has failed to support his assertion that matters developed "which could not have been reasonably foreseen or anticipated" at the time the pretrial deadlines most recently were reset on June 13, 2012. Accordingly, the Court will deny Plaintiff's belated Motion to Amend for failing to demonstrate good cause pursuant to Rule 16(b)(4).[4]

## 2. Defendant Kat Amos's Motion for Protective Order (Dkt. 85)

After Defendant Amos provided Plaintiff her expert witness disclosure, Plaintiff responded with a Notice of Deposition of Katherine Amos. (*See* Dkt. 98-2.) Defendant Amos then filed a Motion for Protective Order to prohibit Plaintiff from conducting her deposition altogether, or in the alternative requesting the Court to order that the deposition be conducted in Dickinson, North Dakota where Defendant Amos currently resides.

Defendant Amos argues that she "identified her opinions in the expert disclosure, not because they are Rule 702 expert opinions but disclosed them under the belief that they fall under Rule 701." (Dkt. 86, p.7.) She further contends that her opinions "were simply disclosed out of an abundance of caution, to the extent a scheduler's job duties and limitations somehow fell under the province of Rule 702." (*Id.*) Finally, if the Court

---

[4]Because Plaintiff failed to establish good cause under Rule 16(b)(4), the Court need not address whether the Motion to Amend satisfies the requirements of Rule 15.

**MEMORANDUM DECISION AND ORDER - 14**

allows Defendant Amos to be deposed, Defendant Amos argues that it should take place in Dickinson, North Dakota to spare her the "undue burden or expense" of having to travel to Idaho for the deposition. (*Id.*, p.8.)

Plaintiff contends that Defendant Amos' Motion for Protective Order does not meet any of the factors establishing "good cause" for protection under Federal Rule of Civil Procedure 26(c). In addition, Plaintiff argues that when Defendant Amos designated herself as an "expert" and disclosed her anticipated "expert" testimony, she "quite simply ma[de] herself available for deposition within the time scheduled for 'expert' depositions, on or before November 9, 2012." (Dkt. 98, p.2.) Plaintiff further disputes Defendant Amos' contention that because her testimony actually qualifies as opinion testimony by lay witnesses under Federal Rule of Evidence 701 instead of testimony by expert witnesses under Federal Rule of Evidence 702, she should not be deposed as an expert witness. Defendant Amos identified herself as an expert -- and whether or not she is later qualified as an expert is not relevant to Plaintiff's ability to depose her as a potential testifying expert. (*Id.* p.3.) Finally, Plaintiff believes that this case "warrants a special exception" for Defendant Amos to be deposed in Boise, Idaho, because "experts have no special protection as to the location of their depositions" and Boise is where "the foundation for her testimony arises." (*Id.* pp.3-4.)

Federal Rule of Civil Procedure 26(c) permits a party to move for a protective order regarding discovery upon certification that the movant has in good faith attempted

**MEMORANDUM DECISION AND ORDER - 15**

to confer with the other parties to resolve the dispute without court action.[5] Thereafter, the court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ...." Fed. R. Civ. P. 26(c)(1). As to the location of the deposition in dispute, the Federal Rules of Civil Procedure do not specify a location where depositions are to occur. However, courts presume that a defendant's deposition will proceed at his or her place of residence, business, or employment. *Willis v. Mullins*, 2006 WL 302343, \*5-6 (E.D. Cal. 2006) (citing *Grey v. Continental Marketing Assocs.,* 315 F. Supp. 826, 832 (N.D. Ga. 1970). In addition, Federal Rule 30(b)(4) specifies that parties can stipulate, or the court on motion may order, that a deposition be taken by telephone or other reliable means. *See* Fed. R. Civ. P. 30(b)(4).

At the outset, it is unclear why Defendant Amos identified herself as an *expert* witness if she unequivocally maintains that her testimony actually falls under Rule 701, which governs the opinion testimony of *lay* witnesses. *See* Fed. R. Evid. 701. The Court agrees with Plaintiff's contention that, when Defendant Amos voluntarily designated herself as an expert witness and disclosed her anticipated expert opinions, she in essence agreed to make herself available for an expert witness deposition; Defendant Amos' rebuttal that she did so to have her lay testimony be considered expert testimony "out of an abundance of caution" is a position the Court rejects. Defendant Amos cannot disclose

---

[5]Defendant Amos filed a Certification that counsel for the parties met and conferred under Local Rule 37.1 regarding Defendant Amos's Motion for Protective Order and confirmed that the parties could not reach a resolution. (Dkt. 89.)

**MEMORANDUM DECISION AND ORDER - 16**

herself as an expert and then attempt to put up a "layman only" shield against a deposition.

Defendant Amos' argument has obscured the type of witness she purports to be at the time of trial. Accordingly, within ten (10) days of the entry of this Order, Defendant Amos will notify Plaintiff and the Court whether she intends to provide testimony as a lay witness or expert witness at the time of trial. If Defendant Amos withdraws herself as an expert witness, the Court will grant Defendant Amos' Motion for Protective Order and she will not be deposed. However, if Defendant Amos notifies the Court that she intends to continue in this case and testify to expert opinions, the Court will deny in part the Motion for Protective Order so that Plaintiff may depose Defendant Amos.

Additionally, the Court will grant in part the Motion for Protective Order to the extent that the Court finds the deposition of Defendant Amos would cause undue burden and expense upon Defendant Amos if it is held in Boise, Idaho. *See* Fed. R. Civ. P. 26(c)(1). This ruling accords with a prevailing presumption that a defendant's deposition generally will proceed at his or her place of residence, business, or employment. If the deposition goes forward, the parties shall confer and decide whether the deposition of Defendant Amos will take place in Dickinson, North Dakota, or by telephonic or other reliable electronic means, if she is not withdrawn as an expert witness. The deposition must occur no later than 30 days after entry of the Court's Order.

**MEMORANDUM DECISION AND ORDER - 17**

## ORDER

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Leave to Reset Scheduling Order and to Amend Complaint (Dkt. 83) is **DENIED**.

2. Defendant Amos' Motion for Protective Order (Dkt. 85) is **GRANTED in part** and **DENIED in part** consistent with the decision discussed above.

3. In light of the Court's previous order vacating the pretrial deadlines (Dkt. 92), the dispositive motion deadline in this case is extended to **July 8, 2013.**

4. In accordance with the parties' previous notifications to the Court (Dkts. 80, 81, 82), alternative dispute resolution need not be scheduled until the Court rules on dispositive motions, if any.

5. As to all remaining defendants and claims, a five-day jury trial is hereby set to begin on **December 2, 2013, at 9:30 a.m.** in Boise, Courtroom 6 before United States Magistrate Judge Candy W. Dale.



DATED: May 16, 2013

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 18**